UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Gregory Taborn,<br><br>    Plaintiff,<br><br>    v.<br><br>Washington Metropolitan Area<br>Transit Authority,<br><br>    Defendant. | Civil No. 14-cv-001378 (APM) |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff Gregory Taborn filed this lawsuit under Title VII of the Civil Rights Act of 1964 against his former employer, Defendant Washington Metropolitan Area Transit Authority ("WMATA").  This case stems from an incident that occurred on October 5, 2013, when Plaintiff, a bus operator, became involved in a verbal altercation with a number of WMATA managers and supervisors over his apparent failure to turn on the interior lights of his assigned bus.  Defendant argues that Plaintiff was terminated as a result of his conduct during that altercation, which violated a number of workplace rules.  Plaintiff, on the other hand, contends that he was fired for an entirely different reason:  because months earlier, he had filed a complaint with the Equal Employment Opportunity Commission alleging that WMATA had not promoted him because of his age, race, and gender.

The court now considers Defendant's Motion for Summary Judgment.  Having reviewed the parties' briefing and the evidence, the court finds that no reasonable jury could conclude that WMATA unlawfully retaliated against Plaintiff.  Plaintiff has produced no evidence showing that

the official who fired him actually knew about his prior complaint; therefore, she could not have retaliated against him. The court therefore grants Defendant's Motion for Summary Judgment.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff Gregory Taborn began working as a bus operator for WMATA in December 1994. Def.'s Mot. for Summ. J., ECF No. 14 [hereinafter Def.'s Mot.]; Def.'s Stmt. of Material Facts, ECF No. 14 [hereinafter Def.'s Stmt.], ¶ 1; Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 15 [hereinafter Pl.'s Opp'n]; Pl.'s Stmt. of Material Facts in Dispute, ECF No. 15 [hereinafter Pl.'s Stmt.], ¶ 1. On July 30, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that WMATA had failed to promote him because of his age, race, and gender (the "July EEOC Complaint"). Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.

About two months later, on October 5, 2013, Plaintiff had a verbal confrontation with multiple WMATA managers and supervisors. The details of the confrontation are immaterial. It suffices to say for present purposes that the confrontation arose when WMATA employees accused Plaintiff of failing to turn on the interior lights of the bus that he was driving. Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 4.

On October 22, 2013, WMATA Acting Bus Superintendent, Jessica Pitt, terminated Plaintiff's employment because of the October 5th incident. Def.'s Stmt. ¶ 5; Pl.'s Stmt. ¶ 5. Pitt determined that Plaintiff's conduct had violated numerous workplace rules. Among other violations, she concluded that he had failed to "perform [his] duties as expected of a professional bus operator"; had "compromised safety"; and had "displayed unprofessional conduct in the presence of customers as well as managers." Def.'s Mot., Ex. 2, Memorandum of Dismissal from Acting Superintendent Jessica Pitt to Gregory Taborn, ECF No. 14-2 [hereinafter Memo of

Dismissal], at 7.  Although Plaintiff defended himself by asserting that the antagonism and "bullying tone" of the WMATA managers who were involved—rather than his own behavior—had instigated the confrontation, *see* Pl.'s Opp'n., Ex. 4, October 9, 2013, Letter from Gregory Taborn to Ted Harris, ECF No. 15-4 [hereinafter Taborn Letter], Pitt nevertheless dismissed him. Memo of Dismissal at 7; Def.'s Stmt. ¶ 5; Pl.'s Stmt. ¶ 7.  Two days after his termination, Plaintiff filed a second complaint with the EEOC (the "October EEOC Complaint"), this time claiming he was fired in retaliation for filing the July EEOC Complaint.  Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶ 7.

At some point, Plaintiff filed a grievance with his union representative, which resulted in an arbitration proceeding.  Pl.'s Stmt. ¶ 11; *see also* Pl.'s Opp'n, Ex. 2, June 12, 2015 Opinion by Arbitrator Andrew M. Strongin, ECF No. 15-2 [hereinafter Arbitration Opinion].  The Arbitrator concluded that Plaintiff's behavior constituted "serious insubordination" and was "unacceptable." Arbitration Opinion at 15.  He also found, however, that the WMATA managers involved in the incident had "instigated and [had] provoked" Plaintiff and had themselves failed to follow certain WMATA policies.  *Id*. at 18.  As a result, the Arbitrator reduced Plaintiff's discipline from termination to a 30-day suspension without pay.  *Id*. at 20.  Nevertheless, Plaintiff has yet to return to work at WMATA.  Pl.'s Stmt. ¶ 13.

### B.     Procedural History

On May 23, 2014, Plaintiff filed a *pro se* complaint in D.C. Superior Court.  *See* Compl., ECF No. 1-4.  The Complaint alleged a single claim:  that Plaintiff "was terminated because he engaged in protected activity when he filed an EEOC Complaint alleging age, gender, color and race discrimination on July 30."  Pl.'s Opp'n at 5.  Defendant then removed the case to this court on August 13, 2014.  *See* Notice of Removal, ECF No. 1.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a)). A material fact is one that is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, [ ] on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted) (footnote omitted). The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted). However, "to defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324). In other words, if the non-

movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Summary judgment, then, is appropriate when the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## IV.  DISCUSSION

Plaintiff claims that Defendant's decision to terminate him constituted unlawful retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a). Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To show unlawful retaliation under Title VII, "a plaintiff must show:  (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Once an employer comes forward with a legitimate, non-retaliatory reason for the challenged employment action, as Defendant has done here, the court must decide whether or not the employee has proven intentional discrimination or retaliation. *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016) (citations omitted). A plaintiff can survive summary judgment "by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for retaliation or discrimination." *Id.* (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)).

Plaintiff's retaliation claim fails for a simple reason:  he has not offered any evidence from which a reasonable juror could infer that either Jessica Pitt—the person who fired him—or any

5

other WMATA supervisor involved in the October 5th altercation had knowledge of his protected activity. *Morris*, 825 F.3d at 673 ("To establish . . . [a] retaliation claim, an employee must have engaged in protected participation or opposition activity about which the employer knew."), citing *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) ("We agree that Jones's supervisors could not have retaliated against him unless they had knowledge of his protected activity."). Plaintiff admitted as much during his deposition. When asked how he knew that his supervisors were aware of his July EEOC Complaint, Plaintiff answered that "[t]here [were] people telling me 'I heard you did this'" and he further pointed to "the overall treatment" at his workplace. Def.'s Mot., Ex. 1, Deposition of Gregory Taborn, ECF No. 14-1 [hereinafter Taborn Dep.] at 107. Yet when asked if any of his supervisors mentioned that they were upset or were going to do something to him because he had filed the July EEOC Complaint, he responded "[t]hey didn't mention it, no." *Id*. at 108. Notably, in a letter written to a different supervisor just days after the October 5th incident, Plaintiff did not mention his July EEOC Complaint or that the WMATA employees with whom he argued were aware of his complaint. *See* Taborn Letter. In short, Plaintiff has not come forward with any evidence—such as his own affidavit or deposition testimony from Pitt—establishing that Pitt or any other WMATA supervisor involved in the altercation was aware of his initial EEOC complaint.

The evidence that Plaintiff's supervisors knew about his protected activity consists of one vague allegation by Plaintiff that unnamed people at his workplace told him at an unspecified time that they were aware of his EEOC filing. There is no evidence whatsoever that Pitt was aware of Plaintiff's July EEOC Complaint. Plaintiff has not offered nearly enough evidence to allow a reasonable jury to infer that Plaintiff was fired *because* of his protected activity. *See McGrath*, 666 F.3d at 1380.

Plaintiff argues that the temporal proximity—about three months—between his July EEOC Complaint and his termination is enough to infer retaliation and allow his action to survive summary judgment. Pl.'s Opp'n at 7-8. On this point, Plaintiff is wrong. The case law in this circuit is clear that absent additional evidence, the fact that a few months passed between the protected activity and the adverse employment action is insufficient to allow a complaint to survive summary judgment. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (finding that the passage of two and a half months between the protected activity and the adverse action was insufficient to support retaliation based on temporal proximity alone); *see also Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("[P]ositive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine."). In any event, the temporal proximity between Plaintiff's protected activity and his firing cannot cure his failure, discussed above, to demonstrate that Pitt, or anyone else involved in the October 5 altercation, knew that he had filed the July EEOC complaint.

Finally, to the extent that Plaintiff argues that Arbitrator's findings enable him to defeat summary judgment, *see* Pl.'s Opp'n at 5, he is incorrect. The Arbitrator's lengthy opinion absolved Plaintiff of some workplace rules violations and reduced his discipline from termination to a 30-day suspension without pay. *See* Arbitration Opinion. It did not, however, address the issue before the court— whether Defendant retaliated against Plaintiff for filing a complaint with the EEOC. *Id*. The Arbitrator made no finding that Pitt, or any other WMATA supervisor, was aware of his protected Title VII activity. Thus, the Arbitrator's ruling provides no evidence from which a reasonable juror could infer that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was pretext for retaliation.

7

## V. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment. A separate order accompanies this Memorandum Opinion.

Dated: September 19, 2016

Amit P. Mehta
United States District Judge